IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CADET CONSTRUCTION COMPANY; CADET LOGISTICS, LLC; AND CHARETTE J. MILLER, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

**COMES NOW** Plaintiff, Frankenmuth Mutual Insurance Company ("Frankenmuth" or "Surety") complaining of Defendants, alleges and says as follows:

### JURISDICTIONAL ALLEGATIONS

1. Frankenmuth is a corporation organized and existing pursuant to the laws of a State other than North Carolina, having its principal place of business in Frankenmuth, Michigan. Frankenmuth is qualified to conduct business in the State of North Carolina.

2. Cadet Construction Company ("Cadet Construction") is a corporation organized pursuant to the laws of the State of North Carolina, having its principal place of business in Wake County, North Carolina. Cadet Construction is engaged in the business of construction contracting on projects in North

Carolina, including ones bonded by Frankenmuth. Cadet Construction is also an indemnitor on the General Agreement of Indemnity referenced herein that was executed to induce Frankenmuth to issue construction bonds on construction projects in North Carolina.

3. Upon information and belief, Cadet Logistics, LLC ("Cadet Logistics") is a limited liability company organized pursuant to the laws of the Commonwealth of Virginia, having its principal place of business in Chester, Virginia. Cadet Logistics is an indemnitor on the General Agreement of Indemnity referenced herein that was executed to induce Frankenmuth to issue construction bonds on construction projects in North Carolina.

4. Upon information and belief, Charette J. Miller ("Miller") is a citizen and resident of Petersburg County, Virginia. Miller is an indemnitor on the General Agreement of Indemnity referenced herein that was executed to induce Frankenmuth to issue construction bonds on construction projects in North Carolina. Miller is listed on the General Agreement of Indemnity as Chief Executive Office and Member for Cadet Construction and Cadet Logistics, respectively. Miller is listed with the North Carolina Secretary of State as the Chief Executive Officer for Cadet Construction Company, with an address of 6300 Chapel Hill Road, Suite 120, Raleigh, North Carolina, 27607.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Frankenmuth

and each of the Defendants, and the amount in controversy (exclusive of interest, costs, and attorneys' fees) exceeds $75,000.00.

6. This Court also has jurisdiction over the parties, and venue is proper in this Court pursuant to 28 U.S.C.A §1391(b)(2), as the construction project at issue herein is located within the Middle District of North Carolina.

## FACTUAL ALLEGATIONS

7. Frankenmuth is a corporation engaged in the surety business and is licensed and qualified to transact such business in the State of North Carolina.

8. On or about February 14, 2018, Miller, as an individual indemnitor, and for and on behalf of corporate indemnitors Cadet Construction and Cadet Logistics (Miller, Cadet Construction, and Cadet Logistics are sometimes hereinafter collectively referred to as "Indemnitors") executed that certain General Agreement of Indemnity, a true and accurate copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference, in favor of Frankenmuth, for the purpose of inducing Frankenmuth, as surety, to consider issuing surety bonds (bid bonds, performance bonds, and payment bonds), from time to time, on behalf of Cadet Construction, in connection with construction projects which Cadet Construction might undertake.

9. The General Agreement of Indemnity contains the specific terms and conditions under which such surety bonds would be issued and delineates the respective rights, responsibilities, and obligations of the Surety and Indemnitors.

10. The General Agreement of Indemnity provides, *inter alia*:

- **Loss** - All loss, costs and expense of any kind or nature, including attorneys' and other fees or costs, which Company incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) making any investigation in connection with any Bond; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) Company enforcing this Agreement….

- **3. Indemnification and Hold Harmless**: Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss….

- **5. Collateral Security**: Indemnitors agree to deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss…. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph….

- **12. Books, Records and Credit**: Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them….

- **16. Jurisdiction**: In any legal proceeding brought by or against Company that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction at the sole and exclusive option of Company, of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is performed. Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court that such proceeding is

4

brought in an inconvenient forum or that the venue of such proceeding is improper.

- **25. Audits and Inspections**: Indemnitor shall permit any of Company's officers, employees, agents or other representatives to visit and inspect upon reasonable notice during business hours any of the locations of Indemnitor (provided that, while a Default exists, Company may make such visits and inspections at any time without prior notice), to examine and audit all of Indemnitor's Property, books of account, records, reports and other papers, to make copies and extracts therefrom and to discuss its affairs, finances and accounts with its officers, employees and independent certified public accountants all at Indemnitor's expense at the standard rates charged by Company for such activities, plus Company's reasonable out-of-pocket expenses (all of which amounts shall be expenses reimbursable hereunder[)].

11. On or about March 13, 2018, Cadet Construction was awarded the contract to serve as the general contractor on the project known as GSO ASR Shelter Replacement Project, Greensboro, North Carolina (the "Project") owned by the United States of America, acting by and through the Federal Aviation Administration ("Owner").

12. At the request of Cadet Construction, Frankenmuth, as surety, executed Performance and Payment Bonds for the Project.

13. The Owner is the obligee on the Performance and Payment Bonds for the Project.

14. On or about April 9, 2019, Frankenmuth received notice from the Owner that it was concerned about Cadet Construction's ability to prosecute and compete its work.

15. On or about September 6, 2019, Frankenmuth received a claim from Jessie Lane's Landscaping & Trucking ("JLLT") who alleged that Cadet Construction failed, neglected, and refused to pay for all labor, services, equipment, or materials furnished on the Project by JLLT to Cadet Construction.

16. On or about April 12, 2019, Frankenmuth, pursuant to the General Agreement of Indemnity, made demand upon the Indemnitors for certain financial information. To date, the Indemnitors have failed to provide all of the information requested by Frankenmuth.

17. On or about May 9, 2019, Frankenmuth was contacted by the Owner and advised that the Owner was concerned that Cadet Construction was behind schedule and that "the risk of this contract not being completed on time is high." The Owner sought assurances from Frankenmuth that it would, pursuant to the Performance Bond, complete the Project in the event Cadet Construction was terminated for default.

18. On or about May 16, 2019, Frankenmuth (through its agent) notified the Indemnitors, *inter alia*:

> Frankenmuth has received communications from the above referenced obligee alleging that Cadet is not adequately staffing the project and is significantly behind schedule, and is therefore in default of its contractual obligations. In this regard, please find attached a copy of an email dated May 9, 2019, from Contracting Officer, Robert K. Higgins to Frankenmuth. As a result, Frankenmuth is exposed to loss and expense under the above referenced performance and payment bonds in an amount up to and including the penal sum of the bond of $4,599,900.00.
>
> ****

6

Case 1:19-cv-01125-UA-JLW   Document 1   Filed 11/11/19   Page 6 of 16

Consistent [with the General Agreement of Indemnity], Frankenmuth hereby demands that you furnish it with collateral in the amount of $4,599,900.00, no later than May 30, 2019. In addition, please immediately provide updated financial statements for each Indemnitor listed herein.

19. To date, none of the Indemnitors has furnished the collateral or updated financial statements to Frankenmuth as demanded in its May 16, 2019 correspondence.

20. On or about August 21, 2019, Frankenmuth, pursuant to the General Agreement of Indemnity, notified the Indemnitors that it was requiring that all remaining contract balances for the Project be placed in an escrow account ("Funds Control Account") that Frankenmuth would establish.

21. On or about September 3, 2019, Frankenmuth, pursuant to the General Agreement of Indemnity, made demand for access to specified books and records of Cadet Construction. Frankenmuth also reiterated its demand for financial statements from the Indemnitors.

22. On or about September 5, 2019, Frankenmuth forwarded a Funds Control Account agreement to the Indemnitors for execution, along with a letter that Frankenmuth directed the Indemnitors to send to the Project Owner.

23. On or about September 23, 2019, Frankenmuth reiterated its request that the Indemnitors execute and return the Funds Control Account agreement.

24. On or about September 23, 2019, Frankenmuth (through its agent) revised and adjusted the list of books and records specified in its September 3, 2019 correspondence.

25. Frankenmuth notified the Indemnitors that it would conduct its books and records review at Cadet Construction's office on October 10, 2019. However, when Frankenmuth's representatives appeared as scheduled, Cadet Construction's office was closed and no one was present from Cadet Construction.

26. On October 21, 2019, Frankenmuth reiterated its demand for access to certain of Cadet Construction's books and records and demanded production thereof and access thereto no later than November 1, 2019. Frankenmuth also advised that if access was not provided to the requested information by November 1, 2019, Frankenmuth would file an action to enforce the provisions of the General Agreement of Indemnity.

27. Frankenmuth has made written demand upon the Indemnitors on multiple occasions to honor their obligations under the General Agreement of Indemnity and to exonerate and indemnify Frankenmuth.

28. The Indemnitors have failed, refused, or neglected to take the actions demanded and required of them under the General Agreement of Indemnity and, consequently, they are in material breach of the General Agreement of Indemnity.

## FIRST CAUSE OF ACTION
### [Breach of Contract]

29. Frankenmuth realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30. Frankenmuth has fully and faithfully performed its obligations under the General Agreement of Indemnity, or it has been excused therefrom because of the acts and omissions of the Indemnitors.

31. The Indemnitors each have breached the General Agreement of Indemnity and have failed to perform their obligations thereunder, including through their failure or refusal to comply with Frankenmuth's demands for collateral, financial statements, and access to Cadet's Construction's books and records.

32. Frankenmuth has been damaged by the Indemnitors' breaches and is entitled to recover from the Indemnitors, jointly and severally, its actual and consequential damages, including attorneys' fees, investigation expenses, and costs, in an amount in excess of $75,000.00, with the precise amount to be proven at the trial in this matter.

## SECOND CAUSE OF ACTION
### [*Quia Timet*]

33. Frankenmuth realleges and incorporates by reference the allegations contained in paragraphs 1 through 32 above as if fully set forth herein.

34. Based on the information received from the Owner regarding the status of the Project and the Indemnitors' breaches identified herein, Frankenmuth has already sustained losses and reasonably and justifiably fears that it will sustain future losses in connection with the Project, including potential claims from the Owner and third-party claimants with rights under the Project bonds.

35. Frankenmuth is entitled to an Order of this Court compelling the Indemnitors, jointly and severally, to exonerate and reimburse Frankenmuth for all losses, costs, and expenses which Frankenmuth has previously incurred or will incur in the future, and compelling the Indemnitors, jointly and severally, to deposit with Frankenmuth adequate collateral to secure and indemnify Frankenmuth for such losses, costs, expenses, and attorneys' fees, in an amount in excess of $75,000.00, the precise amount to be proven at the trial in this matter.

### THIRD CAUSE OF ACTION
**[Contractual Indemnity]**

36. Frankenmuth realleges and incorporates by reference the allegations contained in paragraphs 1 through 35 above as if fully set forth herein.

37. The Indemnitors, jointly and severally, promised expressly in the General Agreement of Indemnity to exonerate and indemnify Frankenmuth from

10

and against all Loss (as defined in the General Agreement of Indemnity) sustained by Frankenmuth.

38. Pursuant to the General Agreement of Indemnity, and by virtue of the Indemnitors' breaches identified herein, Frankenmuth is entitled to recover from the Indemnitors, jointly and severally, all damages, costs, expenses, attorneys' fees, investigation fees, and other losses and expenses incurred, in an amount in excess of $75,000, the precise amount to be proven at the trial in this matter.

**FOURTH CAUSE OF ACTION**
**[Specific Performance]**

39. Frankenmuth realleges and incorporates by reference the allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

40. The General Agreement of Indemnity executed between Frankenmuth and the Indemnitors is the proper subject of, and is sufficiently definite and certain on its face to justify, specific performance.

41. The consideration flowing from Frankenmuth to the Indemnitors under said General Agreement of Indemnity was adequate and said General Agreement of Indemnity was just and reasonable.

42. Frankenmuth has performed all of the terms and conditions on its part to be performed with respect to the General Agreement of Indemnity, save

and except for any of those excused by the acts and omissions of the Indemnitors.

43. The Indemnitors have breached the General Agreement of Indemnity by failing and refusing to perform their obligations to Frankenmuth thereunder.

44. The General Agreement of Indemnity obligates the Indemnitors, jointly and severally, to post collateral security with Frankenmuth to indemnify and hold Frankenmuth harmless against any losses that it might suffer under the Project bonds. Frankenmuth has made demand upon each of the Indemnitors for the posting of said collateral and they have failed or refused to post any such collateral.

45. Frankenmuth's remedy at law is inadequate in that unless this Court orders the Indemnitors, jointly and severally, to post collateral herein, each of the Indemnitors, between now and the time of trial, will have the ability to dispose of their assets so that at the time of trial there will be inadequate assets available to satisfy any judgment that Frankenmuth might obtain under said General Agreement of Indemnity.

46. Frankenmuth's remedy at law is inadequate and Frankenmuth is entitled to obtain an Order of this Court compelling the Indemnitors, jointly and severally, to post sufficient collateral with Frankenmuth pursuant to the terms and provisions of the General Agreement of Indemnity, in an amount in excess of $75,000, the precise amount to be proven at the trial in this matter.

## FIFTH CAUSE OF ACTION
**[Injunctive Relief]**

47. Frankenmuth realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48. The Indemnitors have failed and refused to meet their obligations under the General Agreement of Indemnity and have refused to provide sufficient collateral to secure and protect Frankenmuth against the claims and losses existing and which are threatened or reasonably anticipated.

49. Upon information and belief, the assets of the Indemnitors may be insufficient to adequately secure Frankenmuth for the losses it has sustained or may sustain in connection with the Project Performance and Payment Bonds it issued on behalf of Cadet Construction.

50. Upon information and belief, the Indemnitors are likely to sell, transfer, dispose of, lien, secure, or otherwise divert their assets from being used to discharge their joint and several obligations to exonerate and indemnify Frankenmuth, all to Frankenmuth's irreparable harm.

51. Frankenmuth is without a plain, speedy, or adequate remedy at law, and it will be irreparably and permanently injured unless this Court grants it injunctive and equitable relief as follows:

(a) An Order requiring the Indemnitors each to render to Frankenmuth a full and complete accounting of all assets owned by them or in which they have an interest.

(b) An Order requiring the Indemnitors immediately to allow Frankenmuth full and complete access to all financial books, records, and accounts maintained by each of them.

(c) An Order requiring the Indemnitors to post sufficient collateral to protect Frankenmuth against losses it has sustained or will likely sustain in the future in connection with the Project.

(d) An Order permanently enjoining and restraining the Indemnitors from selling, transferring, or disposing or liening their assets and property, and further enjoining and restraining Indemnitors from allowing their assets and property to be liened, unless and until Indemnitors post sufficient collateral to protect Frankenmuth against losses it has sustained or will likely sustain in the future in connection with the Project.

(e) An Order granting Frankenmuth a lien upon all assets and real and personal property owned by the Indemnitors, or in which any Indemnitor has an interest. Such lien shall secure Frankenmuth against any loss that it may sustain or incur by virtue of having posted the bonds described herein. Further, such lien shall remain in effect unless and until Indemnitors post sufficient collateral to protect Frankenmuth against losses it has sustained or will likely sustain in the future in connection with the Project.

**WHEREFORE**, Frankenmuth prays for this Court to consider this matter and to enter Judgment as follows:

1. Awarding Frankenmuth all of its actual and consequential damages, including attorneys' fees, investigation expenses, and costs, as alleged in the First through Fifth Causes of Action above.

2. Compelling the Indemnitors, jointly and severally, to deposit with Frankenmuth adequate collateral to secure and indemnify Frankenmuth against losses incurred and which will be incurred in the future.

3. Granting Frankenmuth the preliminary and permanent injunctive relief which restrains the Indemnitors from selling, transferring, or disposing or liening their assets and property, including, but not limited to all financial books, records, and accounts maintained by the Indemnitors, and further enjoining and restraining the Indemnitors from allowing their assets and property to be sold, transferred, disposed, or liened.

4. Granting Frankenmuth the preliminary and permanent injunctive relief which compels the Indemnitors, their agents, servants, employees, and all persons acting in aid of or in conjunction with the Indemnitors, to provide Frankenmuth full and complete access to all financial books, records, and accounts maintained by each Indemnitor, pursuant to the terms of the General Agreement of Indemnity.

5. Awarding Frankenmuth such other and further relief which this Court deems just ad proper.

/s/ Andrew L. Chapin

Andrew L. Chapin
North Carolina Bar No. 25794
[achapin@cgspllc.com](mailto:achapin@cgspllc.com)
CONNER GWYN SCHENCK PLLC
P.O. Box 20744
Greensboro, North Carolina 27420
Phone: (336) 691-9222
Facsimile: (336) 691-9259

Counsel for Plaintiff
Frankenmuth Mutual Insurance Company