IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FRANKENMUTH MUTUAL <br> INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CADET CONSTRUCTION COMPANY; <br> CADET LOGISTICS, LLC; AND <br> CHARETTE J. MILLER, <br><br> Defendants. | Case No. 1:19-cv-01125-UA-JLW |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIM OF DEFENDANT CADET CONSTRUCTION COMPANY**

Plaintiff Frankenmuth Mutual Insurance Company ("Frankenmuth" or "Surety"), pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this Memorandum of Law in Support of its Motion to Dismiss the Counterclaim of Defendant Cadet Construction Company (the "Motion").

**SUMMARY**

Defendant Cadet Construction Company ("Cadet Construction") is the general contractor on a $4,599,900.00 construction project (the "Project") owned by United States of America, acting by and through the Federal Aviation Administration (the "Owner"). Frankenmuth issued Payment and Performance Bonds (the "Project Bonds") with a penal sum of $4,599,900.00 on behalf of Defendant Cadet Construction Company in favor of the Owner.

Prior to, as a condition of, and to induce Frankenmuth's issuance of surety bonds on behalf of Defendant Cadet Construction Company, Frankenmuth required Defendants Charette J. Miller, Cadet Construction, and Cadet Logistics, LLC (collectively referred to as "Indemnitors") to execute the General Agreement of Indemnity ("GAI") that is attached as Exhibit 1 to the Complaint.

Pursuant to the GAI, the Indemnitors agreed to, among other things, (a) "deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss," (b) "furnish upon demand . . . free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them," and (c) "permit any of [Frankenmuth's] officers, employees, agents or other representatives . . . to examine and audit all of Indemnitor's Property, books of account, records, reports and other papers, to make copies and extracts therefrom and to discuss its affairs, finances and accounts with its officers, employees and independent certified public accountants all at Indemnitor's expense at the standard rates charged by Company for such activities, plus Company's reasonable out-of-pocket expenses. . . ."

During the Project, Frankenmuth received communications from the Owner that Cadet Construction was not adequately staffing the Project and the work was behind schedule. The Owner sought assurances from Frankenmuth that it

would, pursuant to the Performance Bond, complete the Project in the event Cadet Construction was terminated for default. In an effort to evaluate the status of the Project, the financial solvency of the Indemnitors, and its own potential exposure under the Project Bonds, Frankenmuth made multiple demands to access, examine, and audit the Indemnitors' books and records. Pursuant to the GAI, Frankenmuth also demanded that the Indemnitors furnish collateral in the full amount of the Project Bonds.

Despite these multiple demands, the Indemnitors failed and refused to comply with their obligations contained in GAI. Frankenmuth was left with no other option but is Complaint ("Cmplt.") herein. In response, the Defendants collectively filed an Answer ("Ans.") and Defendant Cadet Construction Company ("Cadet Construction") filed a Counterclaim ("CC") in which it alleges that Frankenmuth tortiously interfered in Cadet Construction's contract with Project Owner.

## STATEMENT OF FACTS

Frankenmuth is a corporation engaged in the surety business and is licensed and qualified to transact such business in the State of North Carolina. (Cmplt. ¶ 1; Ans. ¶ 1, CC ¶ 1). Defendant Cadet Construction Company is a North Carolina corporation that is engaged in the business of construction contracting on projects in North Carolina, including ones bonded by Frankenmuth. (Cmplt. ¶ 2; Ans. ¶¶ 2, 12; CC ¶ 5).

On or about February 14, 2018, Defendants Charette J. Miller, Cadet Construction, and Cadet Logistics, LLC (collectively referred to as "Indemnitors") executed that certain General Agreement of Indemnity (the "GAI") in favor of Frankenmuth. (Cmplt. ¶ 8, Exh. 1; Ans. ¶¶ 2-3 and 8-10, in which Defendants admit that the GAI "speaks for itself.")

The General Agreement of Indemnity provides, *inter alia*:

- **Bond** - Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured ... for or on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement)….

- **Loss** - All loss, costs and expense of any kind or nature, including attorneys' and other fees or costs, which Company incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) making any investigation in connection with any Bond; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) Company enforcing this Agreement….

- **3.** **Indemnification and Hold Harmless**: Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss….

- **4.** **Claim Settlement**: Company shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with, arising out of, or relating to any Bond or Contract shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

- **5.** **Collateral Security**: Indemnitors agree to deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an

amount as determined by Company sufficient to discharge any Loss or anticipated Loss…. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph….

- **12.     Books, Records and Credit**: Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them….

- **13.     Attorney in Fact**: Indemnitors irrevocably constitute, appoint and designate Company as their attorney in fact with the right, but not the obligation, to exercise all rights of Indemnitors assigned or granted to Company and to execute and deliver any other assignments, documents, instruments or agreements deemed necessary by Company to exercise its rights under this Agreement in the name of any Indemnitor. Indemnitors ratify and confirm all acts taken by Company and its designees as such attorney-in-fact and agree to protect and hold harmless Company and its designees for all such acts.

- **25.     Audits and Inspections**: Indemnitor shall permit any of Company's officers, employees, agents or other representatives to visit and inspect upon reasonable notice during business hours any of the locations of Indemnitor (provided that, while a Default exists, Company may make such visits and inspections at any time without prior notice), to examine and audit all of Indemnitor's Property, books of account, records, reports and other papers, to make copies and extracts therefrom and to discuss its affairs, finances and accounts with its officers, employees and independent certified public accountants all at Indemnitor's expense at the standard rates charged by Company for such activities, plus Company's reasonable out-of-pocket expenses (all of which amounts shall be expenses reimbursable hereunder[)].

    **29. Governing Law**: THIS AGREEMENT AND ALL MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT, AND ALL RELATED AGREEMENTS AND DOCUMENTS, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF MAINE….

    (Cmplt., Exh. 1; emphasis and capitals in original).

On or about March 13, 2018, Cadet Construction was awarded the contract to serve as the general contractor on the project known as GSO ASR Shelter Replacement Project, Greensboro, North Carolina (the "Project") owned by the United States of America, acting by and through the Federal Aviation Administration ("Owner"). (Cmplt. ¶ 11; Ans. ¶ 1; CC ¶ 5). At the request of Defendant Cadet Construction, Frankenmuth, as surety, executed Performance and Payment Bonds for the Project. (Cmplt. ¶ 12; Ans. ¶ 12). The Owner is the obligee on the Performance and Payment Bonds for the Project. (Cmplt. ¶ 13; Ans. ¶ 13).

Frankenmuth commenced this action on November 11, 2019, to enforce its rights contained within the GAI executed by the Defendants. (DE 1). On December 13, 2019, the Indemnitors filed their Answer to Frankenmuth's Complaint and Defendant Cadet Construction filed a Counterclaim against Frankenmuth. (DE 12).

In its Counterclaim, Cadet Construction alleges, *inter alia*, that Frankenmuth tortiously interfered with Cadet Construction's contract with the Project Owner. (CC, ¶¶ 11-12). It alleges that "[u]pon information and belief, Frankenmuth is taking certain actions to interfere with Cadet Construction's and the Owners [sic] contract and/or to induce the Owner not to perform the contract" (CC, ¶ 9), and that the alleged interference is "without justification, unrelated to any legitimate business interest, and/or is with actual malice." (CC, ¶ 11).

6

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

While the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," it need not, however, accept as true a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further

factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

In evaluating a motion to dismiss, the court looks to the complaint and materials attached to the complaint. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The court also may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656–57 (4th Cir. 2004).

**ARGUMENT**

As set forth in Frankenmuth's Complaint, Defendants' Answer, and Cadet Construction's Counterclaim, the following facts are undisputed:

- Cadet Construction is the general contractor on the Project. (Cmplt. ¶ 11; Ans. ¶ 1; CC ¶ 5).

- Cadet Construction and the Project Owner have an enforceable contract for the Project (the "Project Contract"). (CC ¶ 7).

- At the request of Defendant Cadet Construction, Frankenmuth, as surety, executed Performance and Payment Bonds for the Project. (Cmplt. ¶ 12; Ans. ¶ 12).

- The Owner is the obligee on the Performance and Payment Bonds for the Project. (Cmplt. ¶ 13; Ans. ¶ 13).

- Cadet Construction does not deny the existence of the GAI and it admits that the GAI "speaks for itself." (Ans. ¶¶ 2-3 and 8-10).

For the reasons more fully set forth below, Cadet Construction's Counterclaim for tortious interference with contractual relations fails to state a

claim upon which relief can be granted and it should, therefore, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## A. Under Maine Law, the Counterclaim Fails to State a Claim Upon Which Relief Can Be Granted

As an initial matter, Cadet Construction has failed to plead what state's law applies to its claim. Because the GIA contains a governing law provision that identifies Maine law as the applicable law[1], Frankenmuth will address Cadet Construction's Counterclaim under both Maine and North Carolina law.

Under Maine law, the required elements of tortious interference with contract are: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage <u>through fraud or intimidation</u>; and (3) that such interference proximately caused damages. *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (underlining added). Furthermore, when a pleading fails to allege one of the required elements for a tortious interference claim, it is properly dismissed. *St. Hilaire v. Edwards*, 581 A.2d 806 (Me. 1990) (dismissing plaintiff's complaint because it failed to allege defendants used fraud or intimidation).

Assuming for the purposes of this Motion only that Cadet Construction's Counterclaim satisfies the first and third elements of a tortious interference claim,

---

[1] Pursuant to the GAI entered into between Frankenmuth and the Indemnitors, including Cadet Construction, the governing law for "ALL MATTERS ARISING OUT OF OR RELATING TO [THE GIA] … SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF MAINE." (Cmplt., Exh. 1; capitals in original).

9

it fails to plead the second element – i.e., that Frankenmuth interfered with the Project Contract through fraud or intimidation.

Under Maine law, the elements of interference by fraud are: (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Rutland*, 798 A.2d at 1111. Under Maine law, interference by intimidation involves unlawful coercion or extortion. *Id*. Because Cadet Construction failed to allege that Frankenmuth interfered through the use of fraud or intimidation, its Counterclaim fails to state a claim for tortious interference under Maine law and the Counterclaim should be dismissed pursuant to Federal Rule 12(b)(6).

### B. Under North Carolina Law, the Counterclaim Fails to State a Claim Upon Which Relief Can Be Granted

A recent decision from this Court summarized the elements for a tortious interference claim in North Carolina:

> Under North Carolina law, the elements of tortious interference with contract are:
>
> > (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

> In order to demonstrate the element of acting "without justification," a plaintiff's complaint must show no motive for interference other than malice. Indeed, a defendant may encourage the termination of a contract if he does so for a reason reasonably related to a legitimate business interest. In other words, [a plaintiff's] complaint must plead factual content that would allow the Court to draw the reasonable inference that [the defendant] acted with malice and for a reason not reasonably related to the protection of a legitimate business interest.
>
> The Supreme Court of North Carolina has held that, with respect to a claim for tortious interference, a motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged. Other courts in this district have also dismissed claims of tortious interference with contract if the complaint does not sufficiently allege malice by the defendant.
>
> *Priddy v. Moses H. Cone Meml. Hosp. Operating Corp.*, 1:18-CV-405, 2019 WL 1244087, at *2 (M.D.N.C. Mar. 18, 2019) (citations and internal quotations omitted).

1. <u>The Counterclaim fails to allege that Frankenmuth caused the Owner not to perform the Project Contract.</u>

The first, and most obvious, defect in Cadet Construction's Counterclaim is that that it fails to allege the third element for tortious interference – i.e., that the defendant intentionally induced the third person <u>not to perform the contract</u>. If a complaint fails to allege that the plaintiff actually lost the contract with which it alleges the defendant tortiously interfered, then the plaintiff fails to allege that the defendant was successful in its attempt to induce a third party to cancel its contract with plaintiff. For example, in *Aerospace Mfg., Inc. v. Clive Merchant Group, LLC*, 1:05-CV-00597, 2006 WL 1476906 (M.D.N.C. May 23, 2006), the plaintiff (Aerospace Manufacturing, Inc.) alleged, *inter alia*, that the defendants tortiously interfered in its contract with United States Navy. In ruling on the defendants' Rule 12(b)(6) motion to dismiss, this Court stated: "Aerospace has

11

not alleged in its Complaint that it actually lost its contract with the Navy. Thus, Aerospace has failed to allege (1) the Defendants were successful in their attempts to induce the Navy, a third party, to cancel its contract with Aerospace or (2) Aerospace suffered actual damage as a result of the Defendants' actions." *Id.* at *3. Consequently, Aerospace's claim for tortious interference was dismissed.

Similarly, in the instant case, Cadet Construction has failed to allege that it lost the Project Contract with the Owner. Likewise, except for a conclusory statement that "Plaintiff is damaged in the amount of at least Seventy-Five Thousand Dollars and No Cents ($75,000)," Cadet Construction has failed to allege with any specificity that it has suffered actual damages as a result of Frankenmuth's alleged actions. In fact, Cadet Construction's claim of interference is alleged "[u]pon information and belief." (CC ¶ 9). Such allegations fail to meet the minimum pleading requirements under *Twombly* and *Iqbal* and fail to satisfy the required elements to state a claim for tortious interference with contract under North Carolina law. Additionally, the Counterclaim as a whole is nothing more than "bare assertions devoid of further factual enhancement." *Nemet,* 591 F.3d at 255. Consequently, Cadet Construction's Counterclaim should be dismissed pursuant to Federal Rule 12(b)(6).

2. <u>As the bond surety on the Project that is subject to the GAI, Frankenmuth cannot interfere with contracts to which it is a party.</u>

It is undisputed that Frankenmuth issued the Payment and Performance Bonds on the Project on behalf of Cadet Construction in favor of the Project Owner. Frankenmuth and Cadet Construction, as obligors, are jointly and severally liable to the Owner, as obligee, for the performance of the Project Contract and payment of any claims arising from subcontractors or suppliers on the Project, up to the penal sum of the bonds.

Both North Carolina and federal courts interpreting North Carolina law have consistently held that a party to a contract cannot tortiously interfere with its own contract. *See, e.g., Billos v. Evonik Stockhausen, LLC*, 1:11-CV-905, 2012 WL 3835899 at *3 (M.D.N.C. Sept. 4, 2012) (citing *Waters v. Collins & Aikman Prods. Co.*, 208 F.Supp.2d 593, 595–96 (W.D.N.C. 2002)). Because it is a party to the Project Bonds which refer to and guarantee the performance and payment obligations of the Project Contract between Cadet Construction and the Owner, and because the Project Bonds were required to be posted as condition of the Project Contract obligations, Frankenmuth cannot be liable for tortious interference with the Project Contract. *See also Natl. Sur. Corp. v. Prairieland Const. Inc.*, 354 F. Supp. 2d 1032 (E.D. Mo. 2004) (court ruled that performance bond surety was "part of" the trade contract at issue and therefore could not be liable for interfering with contracts to which it was a party). Consequently, Cadet

Construction's Counterclaim should be dismissed pursuant to Federal Rule 12(b)(6).

> 3. <u>As the bond surety on the Project that is subject to the GAI, Frankenmuth is a "non-outsider" to the Project Contract and it has a legitimate business interest in the Project Contract, the Project Bonds, and the GAI and, therefore, it cannot be liable for tortious interference.</u>

The fourth element of a tortious interference claim requires that the plaintiff allege that the defendant "acts without justification." The "justification" element was summarized in *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 289–90 (E.D.N.C. 2016):

> Parties who may interfere in contractual relations generally fall into two categories: outsiders to the contract and non-outsiders. An "outsider" is not party to the contract and has no legitimate business interest of [his or her] own in the subject matter thereof. Conversely, any party that had a legitimate business interest in the subject matter is a "non-outsider." For example, non-outsiders to a contract include employees of an organization with whom the plaintiff has contracted. Generally, acts of non-outsiders, such as officers of the employing organization, are presumed to have been done in the interest of the Corporation and are therefore "justified." Thus, tortious interference claims against non-outsiders generally fail because plaintiffs cannot satisfy the fourth element of the tort.
>
> A plaintiff can overcome the presumption that a non-outsider's action was justified by showing that the non-outsider took the action for an improper reason. <u>To do so, a plaintiff must show that the defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest. However, merely alleging an improper actual or primary motive will not suffice. Instead, the complaint must admit of no motive for interference other than malice</u>.

(citations and inner quotations omitted; underlining added).

In *Benjamin*, the plaintiff, a former employee who served as a private high school's headmaster, sued the school, the non-profit corporation that supported

14

Case 1:19-cv-01125-UA-JLW   Document 15   Filed 01/17/20   Page 14 of 20

the school, the chairman of the non-profit corporation, and several members of the school's board of trustees for multiple causes of action. Plaintiff asserted a count for tortious interference with contract against the school (Epiphany) and the chairman of the non-profit corporation (Sparks), alleging that that they interfered in his contract with the non-profit corporation, from which he received additional compensation separate and apart from his employment agreement with the school. Sparks and Epiphany moved to dismissed.

After reciting the law quoted above, the court stated that Sparks was the chairman of the non-profit corporation and had the power to terminate the non-profit corporation's contract with the plaintiff. The court stated further that in his supervisory role, Sparks had a legitimate business interest in the non-profit corporation and it its staffing decisions. The court concluded that Sparks was a "non-outsider" to the contract whose actions carried the presumption of validity. The court also determined that Epiphany was a "non-outsider due to its unique business relationship with the [non-profit corporation]." *Id.* Because the plaintiff failed to plausibly allege that either Sparks or Epiphany intentionally interfered with the plaintiff's contract with the non-profit corporation solely for discriminatory or retaliatory purposes, and because the plaintiff failed to plausibly allege that Epiphany intentionally induced the non-profit corporation not to perform its contract with plaintiff, the court ruled that plaintiff failed to state a claim for tortious interference with contract and dismissed the count.

15

In the instant case, Frankenmuth issued the Performance and Payment Bonds on the Project in which Frankenmuth and Cadet Construction, jointly and severally, bound themselves to the Owner for the penal sum of $4,599,900.00 (the full amount of the Project Contract). As set forth in the GAI, Frankenmuth agreed to issue bonds in favor of Cadet Construction on the condition that the Indemnitors, including Cadet Construction, first execute and agree to the terms of the GAI. The GAI, in turn, grants Frankenmuth broad and sweeping rights to protect itself on bonded projects, such as the right to demand collateralization in the full amount of the bonds, the right to inspect the Indemnitors' books and records, and the right -- in its sole discretion -- to settle claims. Thus, Frankenmuth is clearly a "non-outsider" with a legitimate business interest in protecting and/or limiting its exposure to claims under the Project Bonds. *See also Natl. Sur. Corp. v. Prairieland Const. Inc.*, 354 F. Supp. 2d 1032 (E.D. Mo. 2004) (court dismissed bond principal's counterclaim for tortious interference because surety had valid economic interests in its bonded projects pursuant to the indemnity agreement); *White v. City of Greensboro*, __ F.Supp.3d __, 2019 WL 4784632, at *19 (M.D.N.C. Sept. 30, 2019) (terminated employee's tortious interference claims were dismissed where defendants had a valid reason for terminating the employment).

As a "non-outsider" with a legitimate business interest, Frankenmuth's actions are presumed to be justified.[2] To overcome this presumption, Cadet Construction must show that Frankenmuth "acted with malice and for a reason not reasonably related to the protection of a legitimate business interest." *Benjamin*, 173 F.Supp.3d at 290-91. Moreover, "merely alleging an improper actual or primary motive will not suffice." *Id.* As this Court stated in *Priddy*, "[i]n other words, [a plaintiff's] complaint must plead factual content that would allow the Court to draw the reasonable inference that [the defendant] acted with malice and for a reason not reasonably related to the protection of a legitimate business interest." *Priddy,* 2019 WL 1244087 at *2 (citations and internal quotations omitted).

In the instant case, Cadet Construction makes only a conclusory allegation that "Frankenmuth's interference with Cadet Construction's and the Owner's contract is without justification, unrelated to any legitimate business interest, and/or is with actual malice." (CC ¶ 11.) Such a conclusory allegation not only fails to meet the minimum pleading requirements under *Twombly* and *Iqbal*, it also fails to meet the bar established in *Benjamin* and *Priddy* that the complaint must plead content that would allow the Court to draw the reasonable inference that Frankenmuth acted with malice <u>and</u> without justification (i.e., for a reason not

---

[2] This Court has also held that even an "outsider" to a contract can be exempt from liability if its acts are justified. *See Champion Pro Consulting Group, Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706 (M.D.N.C. 2013) (citations and internal quotations omitted) ("If an outsider to the contract has sufficient lawful reason for inducing the breach of contract, he is exempt from any liability, no matter how malicious

17

related to the protection of a legitimate business interest). *See also Cobra Capital, LLC v. RF Nitro Commun., Inc.*, 266 F. Supp. 2d 432, 439 (M.D.N.C. 2003) (citing *Peoples Security Life Ins. Co. v. Hooks*, 367 S.E.2d 647 (N.C. 1988)) ("Furthermore, even where there is actual interference, a motion to dismiss should be granted where the interference is justified or privileged."); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 351 (4th Cir. 1998) (holding that plaintiff failed to satisfy the fourth element of a tortious interference claim under North Carolina law, i.e., that defendants acted "without justification").

Since Frankenmuth is clearly protecting its legitimate business interests under the Project Bonds, as expressly permitted by the GAI, any alleged interference (which is disputed) is justified and Frankenmuth cannot – as a matter of law -- be liable for tortious interference with contract. Consequently, Cadet Construction's Counterclaim fails to state a claim and it should be dismissed pursuant to Federal Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Cadet Construction's Counterclaim against Frankenmuth should be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

in actuality his conduct may be. In order to demonstrate the element of acting without justification, the action must indicate no motive for interference other than malice.")

Respectfully submitted this 17th day of January, 2020.

/s/ Andrew L. Chapin

Andrew L. Chapin
North Carolina Bar No. 25794
achapin@cgspllc.com
CONNER GWYN SCHENCK PLLC
P.O. Box 20744
Greensboro, North Carolina 27420
Phone: (336) 691-9222
Facsimile: (336) 691-9259

Counsel for Plaintiff
Frankenmuth Mutual Insurance Company

19

Case 1:19-cv-01125-UA-JLW   Document 15   Filed 01/17/20   Page 19 of 20

## WORD COUNT CERTIFICATION

I hereby certify that the body (including headings and footnotes) of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM** contains 4,643 words and is, therefore, in compliance with Local Rule 7.2(d).

/s/ Andrew L. Chapin

Andrew L. Chapin